```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PHILIP DALY d/b/a TAR TAR PRINTING
AND/OR PROPRINTWEAR,

                    Plaintiff,              MEMORANDUM AND ORDER
          -against-                          CV 07-1167 (LDW)(ARL)

UNITED STATES FENCING ASSOCIATION,

                    Defendant.
----------------------------------------------------------------X
```

LINDSAY, Magistrate Judge:

Before the court is the plaintiff's motion for a preliminary injunction referred to the undersigned by District Judge Leonard D. Wexler on April 11, 2007. The parties consented to a binding determination of the motion by the undersigned. During a teleconference on April 10, 2007, the parties also advised the court that, in lieu of an evidentiary hearing, they would rest on their papers and oral argument thereon. Accordingly, the court scheduled oral argument on the plaintiff's motion and counsel for the parties appeared on April 12, 2007 for that purpose.

Based on the plaintiff's memorandum of law in support of the motion, the amended complaint, the affidavit of Philip Daly in support of the motion, the reply declaration of Philip Daly, with the exhibits annexed thereto, the defendant's memorandum of law in opposition, the affidavit of Michael Massik, together with exhibits annexed thereto, the affidavit of defense counsel Thomas J. McNamara with exhibits annexed thereto, the oral arguments and the applicable law, the motion for injunctive relief is denied.

## FACTS

The plaintiff, Philip Daly, d/b/a/ Tar Tar Printing and/or Proprintwear ("Proprintwear"), a resident of Suffolk County, New York, commenced this breach of contract action against the defendant, United States Fencing Association ("USFA") a nonprofit corporation organized under

the laws of the state of Colorado with its principal place of business also in Colorado. (Am. Compl. at ¶¶ 1-3). The USFA is the National Governing Body for the sport of fencing. (Id. at ¶ 6). This court's subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332 given the parties' diversity of citizenship and the plaintiff's allegation that the amount in controversy exceeds $75,000. (Id. at ¶ 4).

The parties agree that the plaintiff and defendant entered into a written Trademark and License Merchandise Agreement ("License Agreement") in July 2001, whereby the plaintiff was granted the exclusive right to manufacture, distribute and sell products carrying the USFA logo. (Id. at ¶ 10; see also License Agreement annexed to the Daly Reply Decl. as Exhibit 1). The License Agreement, which provided the plaintiff with access to vendor space at events sponsored by the USFA, was a one year contract that renewed annually automatically unless either party provided the other with written notification of termination. (License Agreement at ¶¶ 4, 10). The parties dispute centers around whether the defendant provided such notification of termination.

According to the defendant, its Executive Director, Michael Massik, sent the plaintiff a letter dated May 1, 2006 advising that the USFA would not be renewing the License Agreement with the plaintiff. (Massik Aff. at ¶ 2, see also May 1, 2006 letter annexed to the Daly Reply Decl. as Exhibit 2). Although the License Agreement was terminable at will, the letter describes that the contract was terminated for a number of reasons including that plaintiff had failed to submit required royalty payments and because there were many customer complaints concerning his failure to fulfill orders. (Id.). The termination letter set forth the possibility that an entirely new agreement could be negotiated and invited plaintiff to discuss the matter further. (Id.). Although plaintiff contends that he never received this letter and that his licensing agreement

with the USFA continued beyond May 2006, he acknowledges that between May 2006 and January 2007 he met with and spoke multiple times with the defendant in an effort to negotiate new licensing terms. (Daly Repl. Decl. at ¶¶ 6-9 ). In the middle of these negotiations on October 3, 2006, sensing that he may not have a valid license agreement, the plaintiff applied for a USFA corporate membership. (Id. at ¶¶ 16-17). Under the terms of a corporate membership, plaintiff understood that he would not be guaranteed vendor space, as he would under an exclusive license, but rather would have to apply for such access. (Id.). Plaintiff asserts that he applied for this membership simply as a precautionary measure. (Id.). While negotiations were ongoing, plaintiff was permitted to sell logo merchandise at USFA sponsored events. As stated above, these negotiations ended in January, 2007 when the defendant notified the plaintiff by e-mail dated January 23rd that despite their many meetings and discussions, no agreement could not be reached on a new license. (See Ex. 7, annexed to the Daly Reply Decl.). Plaintiff was also informed that his services would no longer be required at future tournaments. (Id.). Plaintiff replied by e-mail stating:

> *[O]ur [b]usiness relationship has changed from that of Official Merchandiser to Corporate Vendor.* We forged a secondary agreement to sell tournament t-shirts and provide the USFA with a percentage of that revenue in exchange for vendor space at National Tournaments. On January 26, 2007 the USFA notified us that our agreement had been terminated. This notification was provided twenty-one (21) days after the 2007 Junior Olympic filing deadline of January 5, 2007 effectively eliminating us from filing a timely application. On February 2, 2007 we made application to attend the 2007 Junior Olympics as a Vendor and the USFA denied our application based upon a late filing and/or limited space considerations. . . . It is clear that the USFA has established a unique application process for our business resulting from your numerous contractual violations *under our previous relationship. . . . We appeal to your better judgment* and respectfully request that you approve our application for the 2007 Junior Olympics and the 2007 Summer Nationals . . . .

3

(Ex. 5 annexed to the Daly Reply Decl.) (emphasis added).

Recognizing that he could no longer attend events as an exclusive licensee, plaintiff then pursued his options as a corporate member. By letter dated March 2, 2007, plaintiff was advised that vendor spots for the season had already been filled and this lawsuit followed. The next USFA sponsored events are scheduled for April 20-April 23rd in Arizona and June 29-July 8th in Florida. The plaintiff seeks a preliminary injunction restraining and enjoining, during pendency and determination of this action, the defendant from breaching the contract between the parties and restricting plaintiff's attendance at USFA events or USFA sponsored events. See Order to Show Cause.[1]

## DISCUSSION

**1. Preliminary Injunction Standards.**

"A party seeking injunction relief ordinarily must show: (a) that it will suffer irreparable harm in the absence of an injunction, and (b) either (i) a likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the movant's favor." Tom Doherty Assocs., Inc. v. Saban Ent. Inc., 60 F.3d 27, 33 (2d Cir. 1995). Where the requested preliminary injunction will provide a movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at trial on merits, a heightened standard has been applied. Id. at 33-34. Under this higher standard, the party seeking relief must "meet the higher standard of substantial, or clear showing of, likelihood of success to obtain the preliminary injunction,"as opposed to a mere likelihood, together with the requisite irreparable injury. Forest City Daly

---

[1] The court notes that the defendant has preserved its right to seek dismissal of the complaint for lack of personal jurisdiction following the disposition of the instant application.

Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999); see also Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988).

It has been said that the use of the heightened standard is "justified when the issuance of an injunction will render a trial on the merits largely or partially meaningless, . . . [such as, in] a case involving the live televising of an event scheduled for the day on which preliminary relief is granted." Doherty, 60 F.3d at 35. While the relief being sought warrants the application of a higher standard, the court need not determine whether the heightened standard should apply as plaintiff is unable to establish either irreparable harm or meet the less stringent standard of likelihood of success.

**A. Irreparable Harm**

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction" is a demonstration of irreparable harm. Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 at 431 (1973) (footnote omitted)). To establish irreparable harm, petitioners must demonstrate "'an injury that is neither remote nor speculative, but actual and imminent.'" Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989) (quoting Consolidated Brands, Inc. v. Mondi, 638 F. Supp. 152,155 (E.D.N.Y. 1986)). But not all actual and imminent injuries will suffice - the injury must also be "one requiring a remedy of more than mere money damages." Id. (monetary loss insufficient unless movant proves that damage cannot be rectified by financial compensation). Following this governing principle, courts have found irreparable harm where a party is threatened with the loss of business or the loss of good will and customers. See Doherty, 60 F.3d at 37. This is precisely the argument propounded by the plaintiff.

The plaintiff cannot genuinely dispute that the losses resulting from his exclusion from the February 2007 Junior Olympic Championship and the March 2007 national event in Georgia or his exclusion from the upcoming events in Arizona and Miami can be rectified by money damages. Rather, the crux of the plaintiff's argument is that "[l]osing the right to attend these events and to use the USFA logo will threaten, if not eliminate, the viability of [his] business." Daly Reply Decl. at ¶ 42. Specifically, the plaintiff contends that:

> I have invested substantial time and money in building [m]y business and approximately 95% of my merchandise is fencing-related. The vast majority of my sales occur at these events. If I can no longer use the logo, or attend events, my opportunity to sell to the fencing community will be virtually eliminated.

Id.

Although the plaintiff's business may in fact be lost if he is prevented from selling logo merchandise at upcoming events, it is apparent from this record that there is no realistic probability that plaintiff's business will continue in the future. The essential difficulty with plaintiff's argument is that it disregards the nature of the relationship between the parties. It is undisputed that the defendant has the right to terminate the agreement on written notice thirty days prior to the termination of the Agreement, here, July 9, 2007. See Licence Agreement at ¶ 4. At the oral argument, counsel for the defendant made clear that they believed they had already terminated their relationship with the plaintiff and were prepared, if necessary, to send yet another written notice of non-renewal of the contract. Accordingly, even if the plaintiff prevails on the merits at trial and can show that the Agreement was not properly terminated in May, 2006, his relationship with the defendant will not continue beyond July, 2007. The absence of any prospects for continuing this business militates against a finding that in the absence of injunctive relief plaintiff will suffer irreparable harm based on the loss of his business. Under these

circumstances, it is clear that money damages will adequately compensate plaintiff for any lost sales during this three month period.

The plaintiff's argument based on the loss of good will and business opportunities also falls short. During the oral argument, counsel for the plaintiff asserted that by excluding the plaintiff from the remaining 2007 events, the defendant is depriving the plaintiff of the opportunity to develop future business beyond the fencing logo line. The plaintiff has not, however, provided any evidence to establish that he had any prospective business beyond the logo line. There is nothing in the record to indicate that the logo items were bundled with other products. Indeed the plaintiff acknowledges that 95% of his existing business was the logo merchandise he sold at these events. (Daly Reply Decl. at ¶ 42). Therefore, the plaintiff 's suggestion that his exclusion from future events is depriving him of the opportunity to drum up additional and new business is at best speculative.

**B. Likelihood of Success on the Merits.**

Even assuming that the plaintiff had established irreparable harm, the plaintiff has not established a likelihood of success on the merits. As noted above, the License Agreement, which is governed by Colorado law, is terminable at will by either party upon thirty days written notice of non-renewal. (License Agreement at ¶¶ 4, 10, 13). According to the defendant, the plaintiff was provided written notice of termination by letter dated May 1, 2006, but the plaintiff claims that he did not receive it.

Notwithstanding the plaintiff's assertion his claim is likely to fail. To begin with, Colorado law creates a rebuttable presumption of receipt when a properly addressed piece of mail is placed in the care of the postal service, Witt v. Roadway Express, 136 F.3d 1424, 1429-30 (10th Cir.1998). Plaintiff does not dispute that the termination letter was properly addressed to

him.  Second, the court need not rely on the presumption of receipt in order to find that plaintiff received the termination letter.  The status of the business relationship between the parties is made clear by their subsequent dealings and e-mail exchange.

The termination letter invited plaintiff to meet with the defendants to negotiate terms for an entirely new licensing agreement.  The letter made clear that the defendants intended to "completely overhaul the existing agreement."  (Ex. 2 annexed to the Daly Reply Decl.).  Plaintiff concedes that sometime after May 2006 until January 2007, he was engaged in negotiations to completely re-configure the license agreement.  Clearly, these negotiations were triggered by the termination letter and would not have occurred had the agreement simply been automatically renewed as plaintiff has suggested.  Plaintiff urges that the fact that he was permitted to sell logo merchandise while negotiations were ongoing is evidence that the original agreement was still in effect.  However by its terms, the termination letter contemplated that notwithstanding the revocation of the agreement, plaintiff would be permitted to sell merchandise during the interim period.  (Id.).  Indeed, the defendant's e-mail to the plaintiff dated January 23, 2007 also describes that the plaintiff had been permitted to continue selling logo merchandise pursuant to an "unsigned and ongoing merchandise agreement."  (Ex. 7 annexed to the Daly Reply Decl.).

The parties e-mail exchange in early 2007 provides further evidence that no licensing agreement was in effect.  The defendant's January 23rd email indicates that negotiations for a written license agreement had reached an impasse and it instructed plaintiff to discontinue selling logo merchandise.  In response plaintiff concedes:

> *[O]ur [b]usiness relationship has changed from that of Official Merchandiser to Corporate Vendor.*  We forged a secondary agreement to sell tournament t-shirts and provide the USFA with a

8

> percentage of that revenue in exchange for vendor space at National Tournaments. On January 26, 2007 the USFA notified us that our agreement had been terminated. This notification was provided twenty-one (21) days after the 2007 Junior Olympic filing deadline of January 5, 2007 effectively eliminating us from filing a timely application. On February 2, 2007 we made application to attend the 2007 Junior Olympics as a Vendor and the USFA denied our application based upon a late filing and/or limited space considerations. . . . It is clear that the USFA has established a unique application process for our business resulting from your numerous contractual violations *under our previous relationship*. . . . *We appeal to your better judgment* and respectfully request that you approve our application for the 2007 Junior Olympics and the 2007 Summer Nationals . . . .

(Ex. 5, annexed to the Daly Reply Decl.) (emphasis added).

This court cannot, despite plaintiff's invitation that it do so, ignore plaintiff's own admission that his position as the official merchandiser of the defendant had in fact been terminated. There can simply be no doubt, given the available evidence, that the licensing agreement between the parties was revoked in May, 2006.

Plaintiff's breach of contract claim with regard to his alleged rights pursuant to his corporate membership is similarly unavailing. Plaintiff's claim is based on the corporate membership application's language that one of the benefits of membership is "access to vendor space at US Fencing National Tournaments." (Ex. 6, annexed to the Daly Decl.). Thus, plaintiff claims that his exclusion from USFA tournaments violates the terms of his corporate membership. Given plaintiff's acknowledgment that corporate membership only entitled him to apply for vendor space his breach of contract claim on this basis is completely without merit. (Daly Reply Decl. at ¶¶ 17-18 and Ex. 12 annexed thereto). Given the above, this court finds that plaintiff has failed to demonstrate a likelihood of success on the merits. For these same reasons, the court also finds that there are no serious questions going to the merits.

## CONCLUSION

Based on the foregoing, the plaintiff's motion for a preliminary injunction is denied.

Dated:  Central Islip, New York       SO ORDERED:
       April 16, 2007

                                                                     /s/
                                                _____
                                                ARLENE R. LINDSAY
                                                United States Magistrate Judge